## PROSECUTION FOR PRESENTING A FALSE CLAIM.

Circuit Court of Darke County.

### WILLIAM H. TOWNSEND v. STATE OF OHIO,

Decided, December 11, 1912.

*Criminal Law—Change of Venue—Prejudice in Community Against Defendant—Impartiality of Jurors—Competency of Evidence as to a Conspiracy to Present False Claims Against County—Charge of Court.*

1. The examination of jurors on their *voir dire* affords the best test as to whether or not prejudice exists in the community against the defendant; and where it appears that the opinions as to the guilt of the defendant of those called for examination for jurors are based on newspaper articles, and that the opinions so formed are not fixed but would yield readily to evidence, it is not error to overrule an application for a change of venue.

2. The court finds no evidence in the record that the defendant was prejudiced by proceeding with the trial immediately after refusal to grant a change of venue, or that error intervened in admitting evidence of a conspiracy, or in the charge of the court to the jury, or in the finding of the jury that the defendant was guilty of presenting a false claim against the county in connection with a bridge contract.

*Martin B. Wainer, George W. Mannix* and *Bickel & Baker,* for plaintiff in error.

*John F. Maher,* Prosecuting Attorney, and *David W. Bowman,* contra.

ALLREAD, J.; DUSTIN, J., AND FERNEDING, J., concur.

This case has been prosecuted and defended with unusual zeal and ability. Many exceptions have been taken to the rulings of the trial court and are now presented for review.

The objections to the indictment and the sufficiency of the pleas in abatement are identical with those considered in the Turner and Fry cases heretofore decided in this court, and we rest upon the views there expressed.

The accused shortly before the day set for trial moved for a change of venue, supporting the motion by the affidavits of

twenty-five citizens from various parts of the county supplemented by copies of newspaper articles appearing from time to time in newspapers circulating throughout the county.

The state offered in opposition to the change of venue twenty-five affidavits. The state also offered by way of affidavit evidence to the effect that competent jurors were readily secured in the four preeceding trials of indictments of the same general nature, and as evidence of fairness one acquittal is cited.

The trial court overruled the motion for change of venue and put the accused on trial.

After the jury was secured the motion for a change of venue was renewed upon the original evidence, together with the *voir dire* examination of the veniremen, and was again overruled.

It has been repeatedly held that the question of change of venue is one addressed to the sound discretion of the trial court and can not be made the subject of reversal, unless it appears from the record that the discretion has been abused.

It is urged that the affidavits tending to show prejudice should be considered as positive and direct testimony, and should preponderate over those tending to show absence of prejudice upon the theory that the latter are negative only.

We are unable to agree with this contention. The affidavits upon each side, so far as they are based upon fact, are equally positive. They refer to the general state of feeling and sentiment among the citizens of the county. Upon this state of the evidence, we can not say that there was an abuse of discretion by the trial court in holding that the evidence for the accused did not preponderate over that for the state and require a change of venue.

It is contended, however, that the newspaper articles are of such character as to make it apparent that public sentiment was inflamed and passion and prejudice aroused to such an extent as to make a fair trial improbable.

Upon the whole we think these newspaper articles are not of such character as to justify the assumption that the body of citizens of the county were so far prejudiced against the accused as to be unwilling or unable to accord a fair trial. Some of them

counsel moderation and appeal to the citizens to await judicial investigation.

We have considered the *voir dire* examination of the veniremen with care, as it affords the best test as to the existence of prejudice. The veniremen were drawn through the agency of the jury wheel and may, therefore, be considered representative. In addition, we have the benefit of direct and cross-examination to bring out the facts more fully than can be expected of *ex parte* affidavits. The examinations disclose nothing more than opinions based upon newspaper articles, and these opinions were not so fixed as to be incapable of readily yielding to the evidence. We find nothing to indicate that a fair-minded jury could not be secured capable of giving the defendant a fair trial.

We are, therefore, of the view that there was no error in refusing the change of venue.

Complaint is made of being forced into trial immediately following the decision upon the motion to change the venue, but we find nothing in the record to show that the accused was unable to secure the presence of his witnesses or was in any other manner prejudiced by being put upon trial at that time.

Upon the question of the qualification of the jurors and the rulings of the trial court upon the challenges, we find that the defendant's challenges were sustained wherever there appeared any suspicion of prejudice against the accused personally. The objections of the plaintiff in error to the accepted jurors and to those challenged peremptorily by the accused are based largely, if not wholly, upon their having formed opinions from reading newspaper accounts, which they stated would require evidence to remove. It will be noted, however, that in all these cases, upon examination by the court, the jurors declared that they could render a fair and impartial verdict, based upon the evidence and the charge of the court. We think that under the authority of *Lindsey* v. *State,* 69 O. S., 215, there was no error in overruling the challenges for cause.

Counsel criticise the trial court for examining the jurors after having stated that they had formed opinions, but it will be noted that under Section 13653, G. C., it *became* the duty of the trial

court to examine the jurors, and, determine as to their impartiality.

Counsel also complain of the statement of the trial judge in deciding the motion for a change of venue that defendant had not shown sufficient interest to be present. We doubt the propriety of this remark, if it was actually made in the presence of the veniremen, but there is no certficate or statement of the trial judge to the effect that the veniremen were present, nor does it appear from the *voir dire* examination that any of the accepted heard the remark or were influenced thereby. The only statement in the record that any jurors were present is that of the counsel, but the fact is not verified by the certificate of the trial court. There is, therefore, no prejudicial error in this respect appearing upon the record.

Objection is made to the proof by the state of alleged conspiracy among Townsend, H. J. Fry, Ed Fry, Lott, Holland and Sipple, and of their respective declarations. This objection is founded: (1) upon the absence of a charge of conspiracy in the indictment, and (2) upon absence of *prima facie* proof of conspiracy.

We think it is competent to prove a conspiracy although not alleged expressly in the indictment, where it is incidental and leading up to the crime charged. This doctrine is announced in the opinion in *Goins* v. *State*, 46 O. S., 457, where it is said:

"Counsel contend that to render the acts and declarations of a co-conspirator competent evidence, the indictment should have in express terms charged a conspiracy. This is true when the act of conspiracy is itself the crime charged; but when some other act is the real offense and the conspiracy is a common purpose leading to the commission of the main criminal act, a conspiracy need not be alleged in express terms, and if any allegation in respect thereto is at all necessary, the charge in the indictment that it was jointly done is sufficient for that purpose."

The same question was involved in the case of *Diegle* v. *State*, 14 C.C.(N.S.), 290, where it was held that the general averment of aiding and abetting was sufficient to admit the evidence.

It is urged that mere declarations of alleged co-conspirators can not be accepted as proof of the conspiracy. The soundness

of this principle may be conceded, but it does not reach the present situation. The proof of conspiracy here rests, not upon mere declarations, but upon the direct testimony of witnesses having personal knowledge of the fact of conspiracy and whose testimony bears upon the *res gestae*. That the witnesses were co-conspirators goes to the weight but not to the competency of the evidence. The testimony tended to connect the defendant Townsend with the conspiracy and show his participation in it.

The conspiracy was, therefore, sufficiently proven *prima facie* by the testimony of H. J. Fry, J. R. Holland and Noah Sipple to justify the court in allowing the evidence in relation thereto, including the acts and declarations of the co-conspirators, to go to the jury.

The evidence tended to show a conspiracy somewhat general in its nature and covering an extended period, to award contracts without competition and upon liberal terms with an agreement for secret commissions from the contractors to the commissioner having charge of the territory, and that in pursuance thereto commissions were paid to both Townsend and Sipple; that H. J. Fry was the favored contractor of Townsend in his territory, and that Ed Fry was in like manner favored by Sipple.

It is urged that the general conspiracy is not germane to the crime charged, to-wit, the presenting and reciepting payment of false voucher of $168, and that the wide scope of the general conspiracy as allowed to go to the jury had a prejudicial effect.

We think, however, that the general conspiracy was properly allowed to go to the jury, because it constituted the main system of transactions out of which the special conspiracy sprung. The general and special conspiracies were so intimately connected as to make the proof of one incomplete without the other.

The evidence offered by the state tended to show that by reason of the general conspiracy and of H. J. Fry's connection therewith, he was called upon to advance $200 of the $400 which Lott was to pay back to the county for salary unlawfully drawn as tax map draftsman. This, it is claimed, H. J. Fry finally did and was repaid partly by the proceeds of the false voucher charged in the indictment.

It was, therefore, competent also to show the acts and declarations of Lott in respect to the $400 refunded, as that formed the subject of the conspiracy and was the first step in the special conspiracy and from which the $168 false voucher was evolved. The declaration of Lott to the deputy treasurer when he paid in the $400, that he expected to get it back, was in harmony with the conspiracy and made while in the act of carrying it forward and was competent.

Special objection is made to the identification and description of the voucher in favor of George Beireis (pp. 194 and 256). No exceptions appear on page 194 and none on page 256 to the specific item of the Beireis claim. The contract and voucher of Beireis was expressly ruled out, and we think that there was no prejudicial error in respect to the identification thereof.

The motion on page 256 to take from the jury evidence in regard to "paying him money right along," referring to the secret commissions paid by Fry to Townsend was too indefinite to apply merely to payments subsequent to the offense charged in this indictment and was, therefore, properly overruled.

The evidence tending to prove the raising of money to bribe the grand jury and suppress the indictments was competent on the subject of guilty demeanor and entitled to go to the jury.

The cross-examination of Townsend as to subsequent transactions was in our opinion made competent by the scope of the direct examination. Townsend in direct examination sought to explain his approval of the contract and voucher for the repair of the Marshall bridge by the statement that he took no active responsibility for work in the territory assigned to Sipple but relied upon Sipple's recommendation and approval. It was, therefore, competent for the state to rebut and discredit this direct testimony of Townsend by cross-examination, showing his active interest in Sipple's territory, and also by rebuttal evidence to the same effect even though it tended to show transactions subsequent but closely associated with the transaction in controversy.

The state relied largely upon the testimony of accomplices to support conviction. The rule of law as to its weight and the

right of the jury to rest conviction thereon was correctly given by the trial court in special request No. 6. Special request No. 7 is not the law in this state but is favorable to the accused and not prejudicial.

Counsel for plaintiff in error insist that special charge No. 3 ought to have been given. This is based upon the proposition that although intent to defraud is not prescribed as an essential by statute, yet having been averred in the indictment, it was incumbent upon the state to prove it. Conceding for the present purpose this contention to be sound, it will be observed that the special charge is more extended than the averment of the indictment. The indictment charges generally an "intent to defraud" while charge No. 3 proposes to place upon the state the burden not only of proving a general intent to defraud but a specific "intent to defraud the county." This is not required by the indictment and is expressly dispensed with by Section 13590, General Code. There was no error, therefore, in refusing this charge.

We find no such misconduct of counsel, either in the trial statement or final argument, as to justify reversal.

Upon the weight and sufficiency of the evidence, it is conceded that the verdict rests largely upon the testimony of accomplices. The case went to the jury upon special charge No. 6 and upon special charge No. 7, which was favorable to the accused. Under these charges, it must be assumed that the jury not only accepted the testimony of H. J. Fry and the other accomplices, but found such testimony to be corroborated.

Before this court is justified in reversing upon the weight of evidence the verdict must be found to be manifestly contrary thereto.

We have no difficulty in reaching the conclusion that the contract for the repair of the Marshall bridge was fictitious, and the bill of $168, therefore, was wholly false. The falsity of the bill was undoubtedly known by H. J. Fry at the time he caused it to be presented and at the time the money was received. The principal offense was, therefore, clearly established.

Did Townsend aid and abet Fry in the commission of the offense? The positive testimony of H. J. Fry that he did is consistent with the other evidence and in some measure corroborated by it.

H. J. Fry was Townsend's favored contractor and received without competition substantially all the bridge contracts in his territory. Townsend signed both the contract and the voucher for the Marshall bridge. The fact that Townsend was the only commissioner who signed both the contract and voucher, taken in connection with the fact that H. J. Fry was his contractor, is consistent with the state's contention and may be said to be in corroboration of it. The relation of H. J. Fry and Townsend was close and confidential to such an extent that Townsend by his own admission allowed Fry to receive contracts in the name of J. R. Holland to deceive the prosecuting attorney and one of the commissioners who objected to the Fry contracts.

When, in connection with these facts, it appeared that the bill presented was wholly false, there was evidence enough to put the defendant Townsend upon his defense. His testimony was to the effect that the Marshall bridge was in Sipple's territory, and that he signed the contract after Sipple and upon his recommendation. Yet, the voucher, itself, which is most important, is not signed at all by Sipple. It is true that Townsend testifies that Lott advised him the bill was correct and asked him to approve it, yet the fact that Sipple did not sign the voucher is to some extent corroboration of the state's claim that Townsend was active in this transaction and in connection with Lot tinspired it.

The testimony of H. J. Fry is also corroborated by other circumstances connected with the alleged conspiracy by the testimony of Holland and Sipple.

We have carefully considered the entire evidence and are of the opinion that the verdict is not contrary to the manifest weight of evidence.

There are other exceptions urged but we find upon the whole record that there is no prejudicial error.

Judgment affirmed.